UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANIEL GRIZZLE,

                    Plaintiff,

          v.                                                  CAUSE NO. 3:18-CV-00535-DRL

STATE FARM FIRE & CASUALTY
COMPANY,

                    Defendant.

OPINION & ORDER

In summer 2016, a strong storm blew down a tree in Daniel Grizzle's yard causing damages

to his home. Under his homeowner insurance policy, State Farm Fire & Casualty Company

compensated him for certain damages, but rejected two additional claims for damages to his home's

electrical wiring and kitchen floors. Mr. Grizzle sued State Farm alleging breach of contract and bad

faith. State Farm filed a summary judgment motion on the bad faith claim only. The court now grants

summary judgment on this claim. Thus, only Mr. Grizzle's breach of contract claim remains.

BACKGROUND

While Mr. Grizzle was on vacation out of state, a storm came through North Manchester,

Indiana causing damage to his home. ECF 25-3 at 15. According to Mr. Grizzle, the storm, as an act

of God, knocked down a tree that fell on the power lines, ripping them out of the house and causing

an electrical surge. *Id.* at 16.

When he arrived home, he noticed the damage to his house and called his State Farm agent,

Mr. Todd Adams. ECF 25-3 at 33. That week, State Farm sent an inspector to Mr. Grizzle's home to

examine the damages. *Id.* at 34. After the first inspection, State Farm issued payments to Mr. Grizzle

for some of his claims, including repair of his well pump; emergency fees to restore power to his

home; labor for removal of the fallen tree; replacement of his computer, food, and appliances; and his hotel stay. ECF 25-5 at 1-9. After receiving the payments, Mr. Grizzle consulted Jay Hatfield, a public adjuster. *Id.* Mr. Hatfield sent State Farm a letter informing the company that he would be working on Mr. Grizzle's behalf and requested all communications regarding the insurance claims to be sent to him. ECF 25-6.

Two additional claims were then pursued by Mr. Grizzle: alleged damages to the electrical wiring in the house and damage to the kitchen flooring. ECF 25-5 at 10. To investigate the electrical wiring, State Farm sent an electrical engineer, John Diggle, to Mr. Grizzle's house. ECF 25-8 at 1. The engineer conducted an inspection of Mr. Grizzle's house while in the presence of Mr. Grizzle's contractor, Randy Good. *Id.* at 2. The engineer concluded that, when the tree branch fell, the riser and meter base were pulled away from the side of the house creating an open neutral condition. *Id.* The fluctuating voltage caused no damage to the branch circuit wiring inside the residence, which otherwise had significantly deteriorated because of its age. *Id.* The engineer nonetheless recommended that the wiring be replaced. *Id.* State Farm denied this claim because the policy did not cover damages resulting from "wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown." ECF 25-16 at 2.

A couple weeks later, Mr. Grizzle sent a photograph to State Farm for damages to the kitchen flooring. ECF 25-9. Mr. Diggle, State Farm Representative Cory McIntire, and Mr. Hatfield went to the home to conduct another inspection. ECF 25-5 at 13-14. At the inspection, Mr. McIntire noticed that the kitchen flooring had been replaced without State Farm having a chance to inspect it; and Mr. Grizzle did not produce a sample of the damaged flooring. *Id.* State Farm thereafter denied Mr. Grizzle's claim for damages to the kitchen flooring.

After some exchange of reports between Mr. Grizzle and State Farm's respective engineers, Mr. Grizzle attempted to invoke the appraisal provision of the insurance policy, naming Mr. Hatfield the appraiser. ECF 25-18. The appraisal provision in the policy reads:

> Appraisal. If you and we fail to agree on the amount of the loss, either one can demand that amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to use, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser of the appraisal and the compensation of the umpire shall be paid equally by you and us.

ECF 25-19. State Farm wrote to Mr. Grizzle: "The appraisal provision of your policy is to resolve differences in the price of the repairs which State Farm determined are covered [and] . . . cannot be used to resolve differences about the scope of work to be performed or coverage provided by contract." *Id.* Additionally, State Farm told Mr. Grizzle that he could not choose Mr. Hatfield as his appraiser who was not "disinterested" under the terms of the policy. *Id.* And further, by completing repairs to the kitchen floors before requesting appraisal, State Farm viewed Mr. Grizzle as having waived his right to appraisal. *Id.* Mr. Grizzle filed suit on June 21, 2018.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## DISCUSSION

A federal court sitting in diversity applies the substantive law of the forum state, so Indiana law applies here. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996).

Under Indiana law, an insurer may be liable for discharging its contractual obligations in bad faith for (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519-20 (Ind. 1993). The lack of diligent investigation alone is not sufficient to establish bad faith. *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008). Even if an insurance claim is erroneously denied, a good faith dispute "about the amount of a valid claim or about whether the insured has a valid claim" does not amount to bad faith. *Id.* The plaintiff must establish with clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for denying liability. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975-76 (Ind. 2005).

An insurer breaches his duty of good faith only when the plaintiff can prove conscious wrongdoing, a state of mind reflecting "dishonest purpose, moral obliquity, furtive design or ill will. *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998). Poor judgment or

4

negligence alone does not amount to bad faith. *Lumbermans Mut. Cas. Co. v. Combs,* 873 N.E.2d 692, 714 (Ind. Ct. App. 2007). Most important, the conduct giving rise to the alleged bad faith cannot solely be a claim denial. *Allstate Ins. Co.,* 885 N.E.2d at 732.

Mr. Grizzle claims that State Farm acted in bad faith by misrepresenting pertinent facts; violating the policy; denying coverage for no valid reason; deceiving the insured; refusing to pay claims within a reasonable time; compelling insured to initiate litigation; delaying payment and claim; refusing to follow State Farm's appraisal provision; and continuing an investigation. ECF 3. These claims are almost exact recitations of Ind. Code § 27-4-1-4.5, which lists unfair claim settlement practices. This section was not meant to create a private right of action for individuals to bring claims against their insurance companies for bad faith. Ind. Code § 27-4-1-1 states that § 27-4-1-4.5 only creates a cause of action by "the commissioner to enforce his order; or a person . . . to appeal an order of the commissioner." Thus, Mr. Grizzle's bad faith claim may only be advanced under Indiana common law. *See Neurological Resources, P.C. v. Anthem Ins. Cos.,* 61 F. Supp. 2d 840, 846 (S.D. Ind. 1999).

For Mr. Grizzle to survive summary judgment on this claim, he must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman,* 621 F.3d at 654. He has failed to present any evidence of bad faith, so summary judgment for State Farm is warranted on this claim.

The record is devoid of any evidence showing how State Farm's denial of coverage was "unfounded" or involved conscious wrongdoing. *See Erie Ins. Co.,* 622 N.E.2d at 519-20. When asked, "Are you aware of any fraud that State Farm has committed in the handling of your claim," Mr. Grizzle responded, "I think the way they're doing is they're trying to fraud out of paying it. They paid what they wanted to." ECF 25-3 at 46. But denying a claim, even if erroneously, is not enough to establish bad faith. *Allstate Ins. Co.,* 885 N.E.2d at 732.

Without judging the merits of Mr. Grizzle's breach of contract claim (not before the court now), the denial of Mr. Grizzle's insurance claims for damages to the electrical wiring and kitchen flooring wasn't in bad faith. State Farm relied on an independent engineer to assess the wiring situation, which does not speak to any bad faith. Its denial of the claim for damage to the kitchen floor, without material proof of its damage and based on self-repair without State Farm's opportunity to inspect it, likewise exhibits no bad faith on this record.

Mr. Grizzle also alleges State Farm acted in bad faith by denying his request to participate in the appraisal process. He believes that this denial demonstrated State Farm's hatred towards him. "Q: Has anyone from State Farm ever told you that [State Farm hates you]? A: Their actions pretty much tell you that . . . [including] [n]ot agreeing to the appraisal process [without explanation of why]." ECF 25-3 at 46-47. Mr. Grizzle argues that "the motive of willfully refusing payment is evidence of the insurer's hate." ECF 28 at 6. This is not the case unless the insurer had knowledge there was no legitimate basis to deny the claim or otherwise acted with dishonest purpose. *Monroe Guar. Ins. Co.*, 829 N.E.2d at 975-976. A triable issue has not been established on this record.

Here, State Farm explained to Mr. Grizzle its reasons for refusing to invoke the appraisal process: "The appraisal provision of your policy is to resolve differences in the price of the repairs which State Farm determined are covered [and] . . . cannot be used to resolve differences about the scope of work to be performed or coverage provided by contract." ECF 25-19. Additionally, State Farm told Mr. Grizzle that he could not choose Mr. Hatfield as his appraiser because he was not "disinterested" under the terms of the policy. *Id.* Further, by completing repairs to the kitchen floors before requesting appraisal, State Farm believed that Mr. Grizzle had waived his right to appraisal. *Id.* In short, by refusing to proceed with the appraisal provision, State Farm was disputing the applicability of that provision (an issue to be decided under Mr. Grizzle's breach of contract claim), and it did so for reasons that don't support a reasonable jury's finding of bad faith.

To create a triable issue on the bad faith claim, Mr. Grizzle only submits (a) his testimony that he felt hated by State Farm; (b) definitions of "moral obliquity" and "ill-will" from Merriam-Webster's online dictionary; and (c) an affidavit from Mr. Joseph Wright, an industrial electrician, who testifies that removing a neutral wire from a circuit undoubtedly creates a surge. ECF 28. Mr. Grizzle's testimony that State Farm hates him because the company denied coverage is not evidence of State Farm's state of mind or conscious wrongdoing. *Colley,* 691 N.E.2d at 1261. The requirements to prove bad faith are found in Indiana case law, not Merriam-Webster's online dictionary, and require more than a good faith dispute over coverage. Mr. Wright's testimony may lend support to Mr. Grizzle's position on coverage, but not bad faith.[1]

Mr. Grizzle cites *Phila. Index Ins. Co. v. WE Pebble Point,* 44 F. Supp. 3d 813, 817-20 (S.D. Ind. 2014), for the proposition that "[c]overage is not an issue in an [a]ppraisal." Again, the court need not decide that issue on this bad faith claim. The issue is whether State Farm, in denying Mr. Grizzle's request for the appraisal process, had knowledge there were no legitimate reasons for denying Mr. Grizzle coverage. Mr. Grizzle has submitted no material evidence to this point. On the other hand, State Farm has submitted three reasons for denying the appraisal request that no reasonable jury could say were offered in bad faith. Summary judgment must be awarded to State Farm on this claim.

CONCLUSION

Mr. Grizzle has not shown that State Farm's denial of additional claimed damage rises to the level necessary to show bad faith to a reasonable jury. Thus, the court GRANTS State Farm's motion for partial summary judgment (ECF 24). The court also GRANTS State Farm's motion to correct its

---

[1] Though, as State Farm points out in its reply brief (ECF 32), Mr. Wright's opinion may not be inconsistent with State Farm's engineer's report. State Farm agrees "an overvoltage or 'surge' event did occur, but that the maximum possible surge could not have caused the damage to [Mr.] Grizzle's internal wiring." ECF 32 at 2. This opinion illustrates that the dispute centers around a factual determination of coverage and one for a jury, but not bad faith.

memorandum in support of summary judgment (ECF 31). The only remaining claim is Mr. Grizzle's

breach of contract claim against State Farm.

SO ORDERED.

February 12, 2020                                      _s/ Damon R. Leichty_____
                                                       Judge, United States District Court